UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN JOHN MARTIN,<br><br>Defendant. | No. 1:21-cr-00228-ADA-BAM-1<br><br>ORDER GRANTING DEFENDANT'S MOTION TO REVOKE THE MAGISTRATE JUDGE'S ORDER DENYING MODIFICATION OF CONDITIONS OF RELEASE<br><br>(ECF No. 51) |

**I.**

**Factual and Procedural Background**

On September 8, 2021, the government filed a complaint against Mr. Martin, charging one count of 18 U.S.C. § 922(g)(9) – possession of a firearm by an individual with a prior conviction for misdemeanor domestic violence. (*See* ECF No. 1.) Mr. Martin is also facing other criminal charges in the District of Columbia in case number 1:21-cr-562-RC. (*See* ECF No. 51 at 2.) At Mr. Martin's initial appearance in the Eastern District on September 9, 2021, the Magistrate Judge ordered him released from custody. (*See* ECF No. 3.) Mr. Martin's conditions of release included, as relevant to this order, (1) posting a $15,000 cash bond to be replaced by a full equity property bond; (2) participating in location monitoring and home detention; (3) submitting to drug and/or alcohol testing at the direction of a Pretrial Services Officer; and (5) surrendering his passport to the Clerk of Court. (ECF No. 7 at 2.)

1

1    On December 17, 2021, three months after his release from custody, Mr. Martin moved
2 for the Court to modify the conditions of his release to remove the location monitoring and home
3 detention requirements. (*See* ECF No. 22). The government opposed that motion, arguing that
4 Mr. Martin had not demonstrated a change in circumstances. (*See* ECF No. 23.) On January 3,
5 2022, the Magistrate Judge granted the request in part, converting Mr. Martin's home detention to
6 a curfew. (ECF No. 26.) The Magistrate Judge framed the order not as a modification, but rather
7 a reflection of the reality that Mr. Martin had been granted so many exceptions to his home
8 detention that he was already essentially abiding by a curfew. (ECF No. 38-1 at 6:8–13.)
9 Additionally, Mr. Martin's Pretrial Services Officer reduced the frequency of his drug testing.
10 (*See id.* at 10:14–19.) The Magistrate Judge did not remove the location monitoring condition.

11    On August 11, 2022, Mr. Martin filed another motion to alter the conditions of his release.
12 (ECF No. 38.) Specifically, he requested that the Court remove his curfew, location monitoring,
13 and drug testing conditions based on his compliance with all conditions of his release over the
14 course of eleven months. (*Id.* at 1.) Mr. Martin noted in his motion that neither of his Pretrial
15 Services Officers opposed the request. (*Id.* at 2.) The government opposed the motion with the
16 same argument it made in opposition to Mr. Martin's prior motion for modification. (*See* ECF
17 No. 44.) The Magistrate Judge held a hearing on August 26, 2022, and this time agreed with the
18 government that the Court could not modify Mr. Martin's conditions of release because he had
19 not demonstrated a change in circumstances. (ECF No. 51-1 at 4:18–5:1.)

20    On October 14, 2022, Mr. Martin filed the instant motion to revoke the Magistrate Judge's
21 order. (ECF No. 51.) The government filed an opposition repeating the same arguments it made
22 in its previous two oppositions. (ECF No. 53.) The Court held a hearing on the matter on
23 November 7, 2022. (ECF No. 55.)

24                                **II.**
25                             **Discussion**

26   There are three issues for the Court to answer in this order. The first is how to determine
27 what standard of review applies to the Court's consideration of Mr. Martin's motion. The second
28 is whether the Bail Reform Act permits the Court to entertain Mr. Martin's motion at all. The

1  third is whether, if the Court can consider the motion, it should grant Mr. Martin's requested
2  modifications. The Court will address each in turn.

3  **A.     The Court will address Mr. Martin's motion de novo.**

4  The standard of review that applies in this case is not apparent. Mr. Martin fashions his
5  motion as an appeal pursuant to 18 U.S.C. § 3145(a)(2), which states, "If a person is ordered
6  released by a magistrate judge . . . the person may file, with the court having original jurisdiction
7  over the offense, a motion for amendment of the conditions of release." It is not clear to the
8  Court, however, the exact basis for Mr. Martin's motion to revoke – whether he is (1) challenging
9  the Magistrate Judge's ruling that the Bail Reform Act prohibited her from entertaining a new
10 motion to modify conditions of release, or (2) challenging the Magistrate Judge's prior orders that
11 actually set Mr. Martin's conditions of release.

12 To the extent Mr. Martin is asking for a reconsideration of the Magistrate Judge's denial
13 of his August 11, 2022 motion, it would seem that this Court's review of such an order would be
14 pursuant is 28 U.S.C. § 636(b)(1)(A). This is because the Magistrate Judge's ruling was
15 jurisdictional in nature; it did not entertain the merits of Mr. Martin's motion. In other words, the
16 Magistrate Judge construed the motion as one to reopen Mr. Martin's detention hearing rather
17 than a motion to amend the conditions of his release. This distinction is subtle, yet significant,
18 because 28 U.S.C. § 636(b)(1)(A) provides for district court review of a magistrate judge's
19 rulings on non-dispositive pretrial matters under a standard of "clearly erroneous or contrary to
20 law." 28 U.S.C. § 636(b)(1)(A). Additionally, parties have fourteen days after issuance of such
21 an order to seek district court reconsideration. Fed. R. Crim. P. 59(a). Under this theory, Mr.
22 Martin's motion for reconsideration would be untimely.

23 To the extent that Mr. Martin is challenging a prior release order – either the initial order
24 from September 9, 2021 or the second order from January 3, 2022 – it is questionable whether he
25 has a statutory right to do so given the length of time that has passed since the issuance of those
26 orders. *Compare United States v. Tooze*, 236 F.R.D. 442, 444–45 (D. Ari. 2006) (holding that
27 Fed. R. Crim. P. 59(a) limits the time to appeal release orders pursuant to 18 U.S.C. § 3145(a))
28 *with United States v. Doby*, 928 F.3d 1199 (10th Cir. 2019) (holding that fourteen-day time limit

3

on appeal in Fed. R. Crim. P. 59(a) applies only to matters that district courts expressly refer to magistrate judges). The government does not challenge the timeliness of Mr. Martin's motion. Moreover, the Court retains the discretion to reopen the issue of bail sua sponte. *See United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991). The Court will, therefore, construe Mr. Martin's motion as a request to exercise its discretion. On such a motion, a court reviews conditions of release de novo. *United States v. Petersen*, 557 F. Supp.2d 1124, 1127 (E.D. Cal. 2008) (citing *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990)).

**B.    *United States v. Kube* does not prohibit the Court from conducting a bail review hearing.**

The Court's discretion to revisit previously set conditions of release is not unlimited. Section 3142(f) of the Bail Reform Act states that the court may only reopen a bail hearing "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).[1] Whether Mr. Martin has presented a change in circumstances permitting the Court to revisit his conditions of release sits at the crux of this case. Mr. Martin argues that his prolonged compliance with the conditions of his release constitutes a change in circumstances. The government disagrees. Both parties agree that the Court's interpretation of *United States v. Kube*, No. 1:19-cr-00257-NONE-SKO, 2020 WL 1984178 (E.D. Cal. Apr. 27, 2020) controls the outcome of this dispute.

In *Kube*, the defendant faced charges of domestic violence after witnesses saw him punch his wife in the face. *Id.* at *1. One of the conditions of the defendant's release was a full no-contact restraining order listing his wife as the protected party, which the defendant sought to

---

[1] Section 3142(c)(3) of the Bail Reform Act provides, "The judicial officer may at any time amend the [pretrial release] order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). The express language of this provision differs from section 3142(f) in that it does not require a change of circumstances prior to amending conditions of release. The parties are not specific about which statutory provision applies to Mr. Martin, but both seem to agree that requiring a change in circumstances is a at least a prudential, if not statutory, threshold inquiry the Court must make before entertaining a bail review hearing. *Accord United States v. Kube*, 1:19-cr-00257-NONE-SKO, 2020 WL 1984178, at *5 (E.D. Cal. Apr. 27, 2020); *United States v. Wei Seng Phua*, No. 2:14-cr-00249-APG-PAL, 2015 WL 127715, at *2 (D. Nev. Jan. 8, 2015); *United States v. Smith*, No. CR-12-1298-PHX-GMS (ECV), 2012 WL 3776868, at *3–*4 (D. Ari. Aug. 31, 2012).

4

1  modify so that he and his wife could live together. *Id.* at *3. The defendant also moved to
2  modify his curfew and change the structure of his alcohol counseling and testing. *Id.* The
3  magistrate judge agreed to modify the defendant's curfew, and pretrial services agreed to modify
4  the defendant's alcohol counseling and testing, leaving the restraining order as the only condition
5  at issue. *Id.*

6  The defendant argued that the court should modify the restraining order because his wife
7  had joined in the request and the defendant had also participated successfully in alcohol
8  counseling for seven months. *Id.* at *4. He also argued that the modification was appropriate
9  because there had been no new instances of assaultive behavior between him and his wife during
10 the pendency of the case. *Id.* at *6. The magistrate judge stated that compliance with conditions
11 of pretrial release "is not new information that has a material bearing on [the defendant's]
12 conditions to reopen the detention hearing." *Id.* at *5. Prior to making this finding, the
13 magistrate judge noted a long history of domestic violence incidents involving the defendant and
14 his wife, most of which the defendant's wife had refused to prosecute. *See id.* at *4. The
15 magistrate judge also noted that the lack of assaultive behavior between the defendant and his
16 wife was attributable to the existence of the restraining order and proof of its efficacy. *Id.* at *6.
17 Despite the defendant's good behavior and compliance with the conditions of his release, the
18 restraining order remained necessary for the protection of the defendant's wife. *Id.* Nevertheless,
19 while the magistrate judge did not permit in-person contact, he did modify the order to permit
20 telephone, email, and video contact because the government did not oppose the change. *Id.* at *6.

21 The government's argument is simple: *Kube*, along with the three district courts that have
22 cited to that case, resolves the matter. (ECF No. 53.) At the hearing on this motion, the
23 government also reiterated the magistrate judge's concern that permitting bail reviews solely
24 based on a showing of compliance with conditions of release would flood the court with bail
25 review requests. (*See* ECF No. 51-1 at 7:6–7). Mr. Martin, on the other hand, argues that *Kube* is
26 wrongly decided and that the Court should overrule it. (ECF No. 51 at 12–14.) He points out that
27 setting the least restrictive conditions of release is an inexact science. (*Id.* at 12.) Determining
28 what conditions are actually least restrictive requires assessing a defendant's performance over

5

time. (*Id.*) Mr. Martin also argues that it is incorrect to assume "that the least restrictive conditions necessary remain static – *i.e.*, the least restrictive conditions necessary at the outset of the case remain so throughout." (*Id.*) He points to the fact that both the Magistrate Judge in this case as well as Mr. Martin's Pretrial Services Officer have modified various conditions of release during the pendency of his case as proof that what once was least restrictive no longer is. (*Id.*) Mr. Martin also asserts that prolonged compliance constitutes changed conditions because it is information that the Court did not have – and could not have had – at the time of the initial detention hearing. (*Id.* at 13.) To ignore this, he argues, would be to disregard the Court's ongoing obligation under the Bail Reform Act to impose the least restrictive conditions of release. (*Id.*) Finally, Mr. Martin argues that *Kube*'s holding renders 18 U.S.C. § 3145 – which provides for district court review of magistrate judge detention orders – meaningless.

Contrary to Mr. Martin's arguments, his case does not compel the Court to overrule *Kube*. As discussed above, the change in circumstances question is a threshold inquiry that courts must conduct prior to addressing the reasonableness of a defendant's conditions of release. If there is no change in circumstances, the court should not address the underlying conditions. The magistrate judge in *Kube*, did, however, address the defendant's release conditions, despite stating that there was no change in circumstances. While the magistrate judge did not grant the defendant's request to remove the restraining order, he still changed its terms. The only way to reconcile this outcome with the statement about a lack of a change in circumstances is to recognize the reason for the magistrate judge's ruling: the government's acquiescence. In order to understand *Kube*'s logic as internally consistent, the Court recognizes the case to stand for the proposition that, while simple compliance with conditions of release does not constitute a change of circumstances, compliance along with the support or acquiescence of the government might.

That reasoning applies in this case.[2] Not only has Mr. Martin complied with all conditions of his release, but he has two pretrial officers who do not oppose his requested changes. In fact,

---

[2] Because Mr. Martin's case does not present a situation where the only alleged change in circumstances is prolonged compliance with conditions of release, the Court does not address the propriety *Kube*'s holding in such a case. The parties should not read this order as either an endorsement or rejection of the statement, "The fact that Defendant has complied with his conditions of release is what allows him to remain out of custody and is not new information that has a material bearing on his conditions to reopen the detention hearing." *Kube*, 2020 WL 1984178, at *5.

at the hearing on the motion, Mr. Martin's Eastern District pretrial officer affirmatively supported the changes to Mr. Martin's conditions because his compliance had demonstrated the conditions were no longer necessary. While one faction of the government – the United States Attorney – objects to Mr. Martin's motion, the Court nevertheless sees the support and acquiescence of Mr. Martin's pretrial officers as sufficient to demonstrate a change in circumstances. The pretrial officers are more intimately involved in Mr. Martin's day-to-day activities than the United States Attorney. Their assessment of Mr. Martin's conduct comes from close observation of his movements and interactions with pretrial service officers. The fact that those officers support a change in Mr. Martin's conditions is information that the Court could not have had at a prior detention hearing, and it is relevant to an assessment of the continuing appropriateness of those conditions. Moreover, garnering the support of Pretrial Services for a change in conditions prior to conducting a bail review hearing addresses the judicial economy concerns that both the government and the Magistrate Judge raised. In fact, it appears to comport with the general practice of judicial officers in the Eastern District. As discussed above, the magistrate judge in *Kube* did not hesitate to alter conditions of release when there was no objection from the government. The Magistrate Judge previously did the same in this case, converting Mr. Martin's home detention to a curfew at the suggestion of Pretrial Services. The Court will, therefore, re-weigh the 3142(g) factors.

**C. The Court will grant Mr. Martin's motion to remove his curfew, location monitoring, and drug testing conditions because they are more restrictive than necessary to ensure public safety and Mr. Martin's return to court.**

When a court determines that pretrial detention is not necessary to reasonably assure public safety or the defendant's appearance in court, it must release that defendant from custody. *Cf.* 18 U.S.C. § 3142(e)(1). A defendant's release is not, however, unqualified – the court may impose conditions of release that are the least restrictive necessary to ensure public safety and the defendant's appearance. *Id.* § 3142(c)(1)(B). When determining the appropriateness of release conditions, courts consider the following factors: (1) the nature and circumstances of the offense;

7

(2) the weight of the evidence against the defendant;[3] (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that the defendant's release would pose. *Id.* § 3142(g).

The Court has already determined that pretrial detention is not necessary in Mr. Martin's case. The remaining question is what conditions are the least restrictive to ensure public safety and Mr. Martin's return to court. In terms of the nature and circumstances of the offense, Mr. Martin asserts that neither his Eastern District nor his District of Columbia case involves allegations of violence. (ECF No. 51 at 8.) He also reminds the Court that he did not make any attempt to flee from law enforcement prior to his arrest in either case. (*Id.* at 7–8.) Regarding his background, Mr. Martin notes that he has strong ties to the Eastern District where he has lived for most of his life. (*Id.* at 8.) His parents, fiancé, and three children live in the area. (*Id.*) These close ties to the Eastern District, the fact that Mr. Martin has surrendered his passport, Mr. Martin's long-term compliance with location monitoring, and Pretrial Services' request to remove Mr. Martin's location monitoring, demonstrate to the Court that location monitoring is no longer a least restrictive condition of release. To be clear, the Court will continue to confine Mr. Martin to the geographic boundaries of the Eastern District, unless he receives approval from Pretrial Services to leave the area.

The Court is also unconvinced that a curfew is necessary to protect the public from Mr. Martin. Mr. Martin notes that, while he has a recent domestic violence conviction, the victim in that case lives out of state and has an active restraining order against Mr. Martin. (*Id.* at 9.) Apart from rehashing Mr. Martin's criminal history, his prior marijuana use, and the underlying facts of the charges against him, the government does little to address why a curfew remains necessary either to protect the community or ensure Mr. Martin's appearance in court in the face of Pretrial Services' recommendation to the contrary. (*See* ECF No. 23 at 1.) That recommendation, along with the fact that Mr. Martin has demonstrated an ability and willingness to comply with court orders during the pendency of this case, convince the Court that a curfew is

---

[3] The Court gives this factor the least weight. *See United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). Neither party addresses this factor in any substance in their briefing.

8

1    no longer a least restrictive condition for Mr. Martin.

2          Finally, Mr. Martin has a DUI conviction from over a decade ago and has admitted to
3    long-term marijuana use. (*Id.* at 9–10.) There has been no indication, however, that Mr. Martin
4    has any issues with substance abuse. In fact, the negative results of his drug testing over the past
5    year indicate that he is more than capable of refraining from using marijuana. Because Pretrial
6    Services already has the discretion to alter the frequency of Mr. Martin's drug testing, the Court
7    will not remove the condition entirely. If Pretrial Services believes that drug testing is no longer
8    necessary, it can cease drug testing. The Court will, however, leave Pretrial Services with the
9    flexibility to reinstate drug testing if they believe it to be necessary in the future.

10         The government argues that Mr. Martin's conditions remain necessary because of various
11   statements he has made in and out of court. While submitting to a DNA swab, Mr. Martin
12   reportedly said that the "FBI is not investigating real criminals," that the search was "just like
13   Mar-A-Lago," that the "FBI is the world's largest gang," and made comments about the
14   nervousness of the FBI agent collecting Mr. Martin's DNA sample. (ECF No. 53 at 2.) The
15   government contends that such comments demonstrate a lack of respect for law enforcement and
16   the Court. (*Id.*) The Court recognizes that Mr. Martin's comments and demeanor were
17   unpleasant. Those comments, however, were non-threatening and simply reflected displeasure
18   with his treatment. Consequently, the Court struggles to understand their relevance in the context
19   of a bail review hearing. Moreover, Mr. Martin has provided the Court with witness affidavits
20   from the DNA swab. (*See* ECF No. 54-1; ECF No. 54-2.) Those witnesses disagree with the
21   government's characterization of Mr. Martin and note that Mr. Martin did not raise his voice or
22   use profanity when interacting the FBI during the swab. Whether the Court considers those
23   affidavits or not, it finds that Mr. Martin's comments during the DNA swab have no bearing on
24   whether he poses a risk of flight or danger to the community.

25         The same analysis applies to the government's allegation that Mr. Martin "back talked" to
26   the Magistrate Judge at the prior hearing on his request to modify the conditions of his release.
27   (*See id.*) Nevertheless, the Court will briefly discuss the transcript from that hearing because it
28   belies the government's description of Mr. Martin. Mr. Martin addressed the Magistrate Judge

almost immediately after she denied his motion by saying,

> I appreciate that. I really wish you would have read the motion, because I feel like my attorney put case law in there that indicates different than your ruling right now.

(ECF No. 51-1 at 6:16–19.) After listening to the Magistrate Judge's response, Mr. Martin expressed his disagreement with the ruling and stated, "I really do appreciate you and I respect you beyond measure, I really do." (*Id.* at 7:12–14.) Mr. Martin proceeded to reassert his innocence and describe a number of blessings in his life before closing with the statement, "I respect the Court, and I respect this process." (*Id.* at 7:14–8:8.). The Court does not agree that this "back talk" in any way bears on the questions of whether Mr. Martin poses a danger to the community or presents a risk of flight.

Finally, the government discusses the fact that Mr. Martin filed a "meritless" motion to quash the search warrant for his DNA. (ECF No. 44 at 1, 3.) According to the government, Mr. Martin "only complied after the court told him that his motion was baseless and Pretrial Services expressed concern with his behavior." (*Id.*) Mr. Martin provides the Court some context regarding the reason for filing, and ultimately withdrawing, the motion to quash. (ECF No. 51 at 4, n.6.) Again, however, the Court does not understand the relevance of this information in the context of a bail review hearing. Mr. Martin is entitled to file motions. What is significant to the Court is the fact that Mr. Martin complied with the court order and submitted to the DNA swab, despite his belief that the warrant was unconstitutional.

Most curious to the Court is the fact that the government does not discuss at all the fact that Pretrial Services supports the alterations to Mr. Martin's conditions of release. There is no dispute that Pretrial Services has the best opportunity to observe and evaluate Mr. Martin's behavior and conduct. In short, they are in the best position to gauge whether the conditions the Court has imposed are actually the least restrictive. They also function as an independent third-party, assessing Mr. Martin from a non-adversarial perspective. While they cooperate with the United States Attorney, *see, e.g.*, 18 U.S.C. § 3154(8), (10), they work under the auspices of the Administrative Office of the United States Courts. *See id.* § 3152(a). Additionally, it is Congress, not any entity in the courtroom, that delineates Pretrial Services' duties, which involve

closely monitoring the conduct of individuals on pretrial release. *See generally id.* § 3154. Their purpose is to provide information to the Court to make informed decisions. *See* Nat'l Ass'n of Pretrial Servs. Agencies, Standards on Pretrial Release 58 (2020). Taking this information into account is critical to the Court's ability to craft pretrial release conditions that comply with the Bail Reform Act and the Constitution. In this case, the support of Pretrial Services, along with the undisputed fact that Mr. Martin has been in full compliance with his conditions, demonstrates to the Court that Mr. Martin's curfew, location monitoring, and drug testing are no longer necessary conditions of his release.

Accordingly,

1. Mr. Martin's motion, construed as a request to exercise the District Court's discretion to re-open his bail review hearing, is granted;
2. The Court finds that the combination of prolonged compliance with the conditions of his release and Pretrial Services' recommendation to alter those conditions constitutes a change in circumstances permitting the Court to reconsider Mr. Martin's conditions of release;
3. The Court finds that location monitoring and a curfew are no longer among the least restrictive conditions to ensure Mr. Martin's return to court and the safety of the public, and the Court removes them as conditions of Mr. Martin's release;
4. The Court denies Mr. Martin's motion to remove drug testing as a condition of his release but leaves it within the discretion of Pretrial Services to continue or cease drug testing as they believe necessary.

IT IS SO ORDERED.

Dated:   November 30, 2022

UNITED STATES DISTRICT JUDGE