PHILLIP A. TALBERT
United States Attorney
JOSEPH D. BARTON
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>    v.<br><br>BENJAMIN MARTIN,<br><br>                  Defendant. | CASE NO. 1:21-CR-00228-NODJ-BAM<br><br>GOVERNMENT'S BRIEF IN SUPPORT OF DEFENDANT'S REMAND FOLLOWING BENCH TRIAL |

## I. Introduction

The defendant, Benjamin Martin, has a penchant for firearms and ammunition that he cannot lawfully possess. He also has a violent history that has escalated over the past few years with incidents involving both his family and the public generally. Finally, he has testified untruthfully in court and instructed others to do the same. As a result, he now has multiple criminal convictions and faces a guideline sentence of approximately five years in prison.

Mr. Martin's behavior shows that he poses a danger to others and that he may take extreme measures to avoid going to prison. He should therefore be remanded into custody pending sentencing.[1]

///

///

---

[1] The undersigned previously informed Mr. Martin's counsel on August 20, 2024, that he would be seeking remand.

1

II. **Argument**

A. **Martin's Background of Violence, Firearms, and Deceit**

In September 2021, the FBI executed a search warrant at Mr. Martin's residence in Madera County, California, and arrested him on charges filed by the United States Attorney's Office for the District of Columbia for the breach of the United States Capitol that occurred on January 6, 2021. During the search, the FBI found eight guns, including an AR-15 style assault rifle, multiple high-capacity magazines for the AR-15, and over 500 rounds of ammunition. All of these items except for one round of ammunition were found in Mr. Martin's safe in the garage of the residence. The one round of ammunition that was not in the safe was on top of it. Importantly, Mr. Martin was prohibited from possessing these items because of his prior domestic violence conviction, and resulting restraining order, for choking his then girlfriend and dragging her back into the house after she tried to flee. *See* Exhibit 1 (redacted police report). This was the first court order preventing him from possessing firearms.

Mr. Martin had two more restraining orders issued against him by his sister and the Sprouts Supermarket Company in the months leading up to his arrest. Both of these restraining orders were issued because Mr. Martin had threatened to physically harm people and at least one of them again prevented him from possessing firearms. The following is an example of threatening text messages that he sent to his sister over a business dispute:




2

Following his arrest, Mr. Martin was indicted in the District of Columbia in the Capitol breach case and in this District in the instant firearms case. He recently went to trial in the Capitol breach case where the evidence showed that he held a door to the Capitol open while officers tried to close it. He kept the door open so that other rioters could spray chemical irritants and throw objects at the officers. Mr. Martin testified in his own defense at the trial and told the jury that he was just a journalist who did nothing wrong. The jury disagreed and convicted him on all counts. Those counts included two felonies for civil disorder and obstructing an official proceeding, and a misdemeanor for disorderly and disruptive conduct in a restricted building. The government has transcripts of Mr. Martin's testimony at the trial ready for the Court's review upon request.

Thereafter, Mr. Martin requested a stipulated facts bench trial in the instant firearms case. The bench trial is scheduled for September 10, 2024, before this Court, and Mr. Martin has admitted the facts required to convict him of the charges in a stipulation filed by the parties. *See* Dkt. 110.

### B. Martin Now Faces Years in Prison Under the Guidelines

The undersigned has been informed by the United States Attorney's Office for the District of Columbia that Mr. Martin's United States Sentencing Guidelines ("U.S.S.G.") range in the Capitol breach case is at least 10-16 months in prison. And the undersigned has calculated his U.S.S.G. range in the instant firearms case as being at least 51-63 months. The undersigned's calculations are as follows:

- Applicable guideline = U.S.S.G. § 2K2.1
- Base offense level = 20 under U.S.S.G. § 2K2.1(a)(4)
- Obstruction of justice = + 2 under U.S.S.G. § 3C1.1
- Acceptance of responsibility = - 2
- Total offense level = 24
- Range of imprisonment = 51-63 months.

These calculations are understated because they assume that Mr. Martin's Criminal History Category is I. His category would increase to at least II, and his U.S.S.G. range would increase to at least 57-71 months, if he was sentenced in the Capitol breach case first.

The base offense level in the firearms case is 20 because Mr. Martin was found with an AR-15 that was capable of accepting a high-capacity magazine and had multiple high-capacity magazines

3

1  nearby, and he was a prohibited person at that time.  *See* U.S.S.G. § 2K2.1(a)(4)(B).  The obstruction
2  enhancement comes from a recorded jail call that Mr. Martin made to his fiancée, C.G., shortly after his
3  arrest.  On the call, he instructed C.G. to tell authorities that the firearms belonged to her and her father
4  and that he did not know about them.  She agreed to do so.  The following is a transcription of the
5  relevant portion of the call:
6      [Call begins]
7      …
8      BM    I'm worried- I'm worried- I'm worried about the thing that they tipped over in the garage
9            and that stuff
10      CG    Yeah, he seemed to think that was going to be a problem for you.
11      BM    Yeah.  It is going to be.  That's going to-
12      CG    Mkay.
13      BM    That'll probably get me locked up.  Unless there's a way I can prove that they're
14            not mine
15      CG    Yeah.
16      BM    Like they were your- they were yours and your dad's, right?  I think those were the ones-
17      CG    Mhm.
18      BM    did our buddy--
19      CG    They're my dad's hunting rifles.
20      BM    Right.  That's what they were right?
21      CG    Mhm.  Yes.
22      BM    Yeah, and I didn't have the code to the safe. That was your safe and I don't know
23            anything about it. [pause] So I don't know.
24      …
25      [Call ends].
26  The statement that the firearms belonged to C.G. and her father is not true as shown by the stipulation
27  the parties previously filed where Mr. Martin admits the firearms belonged to him.  *See* U.S.S.G. §
28  3C1.1, Application Notes 4(A) and (B).  The government has a recording of this call and a transcript

ready for the Court's review upon request.

## C. Martin Poses a Serious Threat and Has No Regard for the Law

Mr. Martin has shown a steady pattern of violent and deceitful behavior over the past several years, and he remains a threat. He has choked a woman, invaded the Capitol, kept an arsenal of firearms and ammunition that he could not lawfully possess, had multiple restraining orders issued against him, instructed his fiancée to make a false statement to authorities, and recently testified untruthfully at a federal trial. Taken together, these facts show Mr. Martin is dangerous and has no regard for the law.

## D. Martin May Have More Firearms and Ammunition in His Possession

Moreover, the government is concerned that Mr. Martin may have additional firearms and ammunition that were not recovered when the FBI searched his residence. On two recorded jail calls that Mr. Martin made to C.G. shortly after his arrest, C.G. described the areas of their residence that the FBI had searched. When C.G. tried to tell Mr. Martin that the FBI had missed the attic in the garage of their residence, he abruptly stopped her and told her not to say anything more about it. The following is a transcription of the relevant portions of the calls:

[First call begins]

…

CG   And they did find like your Madera Department and your certificate a-c-a title for cars umm all our cupboards are open in the bathroom. Uh your closet is disheveled there's gun cases that they have open in here ob-obviously there's empty because there are no guns. So oh, they went up in the attic above your closet whew they've looked everywhere. My closet looks pretty disheveled. Uh looks like they went through it quickly though. Umm I love you.

BM   So they probably went in the attic above the garage too. Oh yeah, I'll call you back if it disconnects.

CG   Ok.

BM   Alright.

CG   Um [pause] let me see.

BM   All the computers are gone I'm sure?

5

| | | |
|---|---|---|
| 1 | CG | Um laundry room is empty.  Yup, everything is empty in here in the laundry room just- |
| 2 | | [First call terminates] |
| 3 | | [Second call begins] |
| 4 | | … |
| 5 | CG | And funny thing is I don't see that they went up in the— |
| 6 | BM | Don't say it. |
| 7 | CG | There's no indication that they went up the s— |
| 8 | BM | Du bu bu bu bu Yeah, I know— |
| 9 | CG | Huh? |
| 10 | BM | I-I hear what you're saying- |
| 11 | CG | Yeah. |
| 12 | BM | I heard you.  I'm good.  I'm clear.  Yeah. |
| 13 | | … |
| 14 | | [Second call ends]. |

The government believes these calls show Mr. Martin was hiding something, such as additional firearms or ammunition, that he did not want authorities to know about and that he may still have in his possession.  The government has recordings of these calls and transcripts ready for the Court's review upon request.

### E. **Martin's Release Pending Sentencing in Capitol Breach Case is Immaterial**

Mr. Martin was released pending sentencing in the Capitol breach case.  That decision, however, is immaterial because he has since been convicted in the instant firearms case.  This changes the analysis because it his second federal criminal conviction and third criminal conviction overall.  The nature of his Capitol breach conviction is also very different from his firearms conviction.  Firearms can seriously injure and kill others especially when they are put in the hands of a dangerous person like Mr. Martin.  That is why federal laws punish firearms violations so harshly.

### III. **Conclusion**

For all of these reasons, Mr. Martin cannot meet his burden to show by clear and convincing evidence that he does not pose a danger to others or a flight risk.  18 U.S.C. § 3143 ("… the judicial

officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, … be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community …"). Mr. Martin has a track record for hurting and scaring people, and for lying to authorities. He has also disregarded at least two prior court orders that prohibited him from possessing firearms. And he now faces a five-year prison sentence, which gives him a strong incentive to flee or otherwise act out. He should therefore be remanded pending sentencing.

Dated: September 7, 2024

PHILLIP A. TALBERT
United States Attorney

By: */s/ Joseph Barton*
Joseph Barton
Assistant United States Attorney

# EXHIBIT 1

# LAW ENFORCEMENT REPORT FORM
## FRESNO POLICE DEPARTMENT
2323 MARIPOSA MALL, FRESNO CA 93721
Phone: (559)621-7000
CA0100500

**Event:** 17BE2208     **Case:** 17-049056

## INCIDENT INFORMATION

**Reports:** 1 to 3    **District:** NW    **Beat:** B    **Zone:** 1252
**Definition and Class:** PC273.5(A) - CRPL INJ:SPOUS/COHAB/DATE - Lvl F
**Reclassed From:** PC 243(E)(1) BAT:SPOUSE/EX SP/DATE/ETC M
**Reclassed By:** P1055
**Reclassed On:** 12/8/2017
**Occurred From:** 06/17/17 15:18 Sat    **Occurred To:**    **Received Date:** 07/28/17 15:18 Fri
**Location:** ████████████████████████████
**Cross Street:** ████████████████████
**How Rcv::** O

## CASE FACTORS

**FOLLOWUP**
    NO PROSECUTION DESIRED
**INVESTIGATION**
    VICTIM REFUSED TO PROSECUTE
**OTHER FACTORS**
    SUSPENDED
**SOLVABILITY FACTORS**
    SUSPECT CAN BE IDENTIFIED

## APPROVALS AND ROUTING

**Close Class:** 4D4 - DOMESTIC VIOLENCE / SIMPLE ASSAULT    **Open Class::** 5AFR
**CAS Code:** ASLT
**Printed:** 9/3/2021 11:43:43 AM    **Printed By:** HASTINGS (V3256), CORY(P1592)    **Printed From:** A76623
  Domestic Violence, Press Log
**Rpt #:** 1    **Type:** FIRST    **Officer:** XIONG (V2030), THAOSENG #P1055    **Clerk:** #    **Created:** 07/28/17 15:19
**Filed Date:** 07/28/17 15:19    **Assigned Date:** 07/28/17 15:19
**Approved By:** XIONG (V2030), THAOSENG #P1055      **Date Approved:** 8/23/2017 2:31:46 PM
**Reviewed By:** SMITH (V2009), DORTHY #T95      **Date Reviewed:** 8/24/2017 7:53:13 AM
**Rpt #:** 2    **Type:** SUPP    **Report Time:** 0    **Investigation Time:** 0    **Officer:** XIONG (V2030), THAOSENG #P1055
**Clerk:** XIONG (V2030), THAOSENG #P1055    **Created:** 11/30/17 13:55    **Filed Date:** 07/28/17 15:18
**Assigned Date:** 11/30/17 13:55
**Approved By:** XIONG (V2030), THAOSENG #P1055      **Date Approved:** 12/12/2017 9:22:32 AM
**Reviewed By:** SMITH (V2009), DORTHY #T95      **Date Reviewed:** 12/12/2017 11:52:21 AM
**Rpt #:** 3    **Type:** SUPP    **Report Time:** 0    **Investigation Time:** 0    **Officer:** BAHENA (V3463), MANUEL #P1794
**Clerk:** BAHENA (V3463), MANUEL #P1794    **Created:** 03/07/18 09:39    **Filed Date:** 07/28/17 15:18
**Assigned Date:** 03/07/18 09:39
**Approved By:** BUSTOS (V3097), TONY #S179      **Date Approved:** 3/7/2018 4:51:32 PM
**Reviewed By:** XIONG XF 2.15.19, NOU #T533      **Date Reviewed:** 3/8/2018 11:38:31 AM
**Routing:** None

## NAMES

[redacted]

Page 1 of 8

**FRESNO POLICE DEPARTMENT**

| Event: 17BE2208 | CA0100500 | Case: 17-049056 |

## NAMES

[redacted]

## MO
None

## OTHER FACTORS
None

## NARRATIVE

Narrative from Report #1   XIONG  (V2030), THAOSENG (P1055)

**SOURCE:**
On 07/14/17, I was given a courtesy report from Eugene, PD regarding a Domestic Violence incident which had occurred on 06/20/17 in the city of Fresno.

**INVESTIGATION:**
I reviewed the report and contacted the Victim in this incident.  She related the following statements.

**STATEMENTS OF VICTIM:**
Victim said she and her boyfriend (Suspect-Martin, Benjamin) are both real state agents.  They live in Eugene, Oregon but were in Fresno, CA on the date of this incident.  They were both staying at the home of his parents on [redacted]

Victim explained that she and Suspect had been in an 8 month relationship prior to this, and have no children in common. She advised that they were at a friends birthday party and Suspect had drank alcoholic beverages. Suspect did not appear intoxicated when she drove them home. Victim advised that Suspect fell asleep when they returned. She looked through his phone and found text messages that suggested he was contacting escorts.

Suspect woke up and was angry that she was looking through his phone. Victim said that he put his left hand on her neck and squeezed her neck. She could not breath and she felt like she would pass out. Victim said Suspect eventually let go of her neck. His parents were asleep in the other bedroom. He locked the bedroom door so she was not able to leave.

Victim sat on the bed and tried to act calm. She then ran out of the bedroom through on of the bathrooms, She exited the residence and tried to waive a car down. Suspect came outside and her dog also came out. Suspect picked her up and carried her back into the residence.

Victim said she knocked on his parents bedroom door. He grabbed her hand to stop her. They went to their bedroom and his parents came in to check on them. He told his parents that everything was fine.

Victim said they fell asleep later in the evening.

Victim said the Suspect had left the residence in the morning and she started packing her belongings. She was going to leave him in Fresno and planned to drive back to Oregon. During this time he returned and started blaming her for this.

Victim said she came back to Oregon. Victim doesn't want to pursue charges at this time. She had no further statements to provide. I concluded my interview with her.

**OBSERVATIONS OF INVESTIGATOR:**
Victim initially made a courtesy report with Eugene PD regarding a Domestic Violence incident that occurred in Fresno, CA. I contacted her once I received the courtesy report. Victim advised that she doesn't want to pursue charges.

**CONCLUSIONS / DEDUCTIONS:**
Victim reported that a physical altercation occurred after she found text messages on the Suspects phone.

Victim doesn't want to pursue charges at this time.

**DISPOSITION:**

Case Suspended.
Courtesy report was scanned into RPW

Narrative from Report #2    XIONG (V2030), THAOSENG (P1055)

**SOURCE:**
On 11/30/17 I received a phone call from the Victim. She wanted to re-open the case and pursue charges.

**INVESTIGATION:**
She related the following statements.

**STATEMENTS OF VICTIM:**
Victim said she has changed her mind and wants to pursue charges. I asked her what had made her have a change of mind. Victim said that initially she wanted to just get a restraining order to keep him away from her back in Oregon. She was granted a stalking order, which prohibits him from being in contact with her, but she did not get a restraining order. Suspect-Martin is violating the order by contacting her. She wants to pursue this case because he hasn't stop trying to contact her in Eugene, Or. I advised her that she would need to report any violations of the stalking order in Eugene, OR to Eugene PD. Victim said that she understood but still wants to pursue charges in this case. I advised her that I will need to contact any friend and family member that she had disclosed this incident to.

Victim advised that she had spoken to her friend ███████ in Sacramento, CA before making the Police report in Oregon. She also spoke to her mother ███████ and a male friend ███████ after she had returned to Eugene, OR.

I concluded my conversation with her.

On 12/05/17, I called and left a message on her friends phone. I then called and spoke to Victims male friend ███████. He related the following statements.

**STATEMENTS OF ███████:**

███████ said he has known Victim since 2010 or 2012. ███████ said that Victim had contacted him when she returned from Fresno, CA. Victim texted him around 10 pm so he called her. Victim asked him to go over, so he drove over and Victim talked about what had happened the night before in Fresno. She talked about the event that happened in Fresno, Ca. Victim said she was at a party with Suspect and he was drinking heavily and he got mad after she made a sarcastic comment. They went back to his parents house and he got mad.

███████ said he remembers Victim saying that she walked or ran to the house when they got home, and Suspect followed behind her. He grabbed her from behind and tackled her. He grabbed her on her neck and his father looked out the window and came and stopped this. Victim told him that she slept in an adjacent room and packed her belongings and left in the morning.

███████ said he was there for two and a half hours so Victim talked a lot about their relationship. He advised that Suspect has been harassing Victim daily non stop after she made the Police report in Eugene.

I asked him if he had seen any visible injuries on the Victim. He advised that he didn't see any visible injuries on her when he was there. I concluded my interview with him.

**STATEMENTS OF ███████:**

I asked her to detail her relationship with Victim. ███████ said she's known Victim for about

12 years since high school. They talk every now and then. They last spoke about her case involving Victim and her ex-boyfriend (Ben) a while back when ▓▓▓▓▓▓▓ was still living in Sacramento, CA. She explained that Victim had never talked about her relationship with the Suspect when they were dating, but she started to talk about her relationship after the incident that had occurred in Fresno, CA.

She advised that she was in sacramento and Victim was back in Eugene, OR when she called. She remembers the Victim telling her that (Victim and Suspect) were staying with his parents when she started realizing that he had a drinking problem. She called the relationship off after an incident. This incident started when they were called to a friends party. She had asked Suspect not to drink because they were going to drive back to Eugene the following day. He promised not to drink but he drank anyways. Suspect drove them back after the party and they argued because he had said something sexual to a friends wife.

During this argument he had barricade them inside a room, and he put his hand on her throat. His parents somehow intervened and she escaped the house and ran from the house but he chased her down.

▓▓▓▓▓▓▓ advised that she doesn't remember every little detail, but she does remember talking to Victim when Victim drove back to Eugene, OR. The above statements were what she remembers the Victim telling her.

She had no further statements to provide and I concluded my conversation with her.

I called and spoke with the Victim. She said that she had a recorded phone conversation between herself and the Suspect. She would send the recording to me via my work e-mail.

I received this recording on 12/01/17. The following is a summary of the comments made by the male identified as "Ben."

## RECORDING SYNOPSIS:

The male says he remembers throwing her on the bed. Putting her up against the wall. He remembers choking her and covering her mouth. He remembers yelling at her. She asked if he remembers tackling her in the neighbors yard. He said he remembers chasing her into the neighbors yard and he remembers that.

The male asked to get back with her. She tells him that she doesn't want to because she's scared.

On 12/08/17 I made contact with Victims mother ▓▓▓▓▓▓▓ via phone. She related the following.

## STATEMENTS OF OTHER#3-▓▓▓▓▓▓▓:

I asked her if she could remember how she was made aware of the incident between Victim and the Suspect. ▓▓▓▓▓▓▓ said that Victim had called her on the phone when Victim had left Fresno and was on her way home. Victim was driving from Fresno to Eugene and was on the blue tooth talking to ▓▓▓▓▓▓▓. Victim told her that Ben (Suspect) had tackled her on the ground and had choked her. Victim said that his parents had to pull him off of her. ▓▓▓▓▓▓▓ said that they spoke about it more, and she told me that he was abusive when he drank. That she was afraid of him. She was always trying to have someone with them whenever he drank. It could be his kids or

family.

I asked ▮▮▮▮▮▮▮ if Victim had explained how this incident had started. ▮▮▮▮▮▮▮ explained that the Victim stated that there were call girls involved. Victim disclosed that the Suspect had payed prostitutes for sex. Victim had found a girl's number on Suspects phone and she called this girl and got into an argument with this call girl. Victim explained that this was how the incident started. Victim and Suspect got into an argument, but she didn't pry into her business.

She had no additional statements and I concluded my interview with her.

I then called and spoke with Suspect-Martin, Benjamin John via phone. He related the following statements.

**STATEMENTS OF SUSPECT-MARTIN:**

I identified myself to Suspect-Martin. He confirmed himself to me by providing his full name. I asked him if he had time to talk to me. He asked me what this was about. I informed him that it was in regards to an open investigation involving himself and the Victim. He then informed me that Victim was an ex-girlfriend of his and he hasn't spoken to her for about six months.

He advised that he doesn't want to talk to me and he referred me to his attorney.

I concluded the phone conversation.

**INVESTIGATIONS CONTINUED:**
Victim had provided the names and phone numbers for Suspect-Martins parents. Victim states that they were home when the incident occurred and may have over heard the disturbance. The following are names and numbers for them:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

I called and left a message for ▮▮▮▮ to call me with the number provided.

I searched for Suspect-Martin's CDL photo using the name, DOB and CDL provided for Suspect-Martin. I located his CDL under ▮▮▮▮▮▮▮ and copied only his photo. I did not include any personal information such as name, DOB and CDL number. I then sent Victim a copy of the photo via e-mail and asked her if she knew who the person in the photo was. Victim sent an e-mail back with the response "That is Benjamin John Martin."

**INVESTIGATIONS CONTINUED:**
It should be noted that the courtesy report taken by Eugene PD was generated on 06/20/17. The date of the incident was reported to have occurred on 06/17/17.

The following was stated on the report regarding "IS=Injuries sustained."

   Small scratch under right eye (not visible on 06/20/17)
   Red bump on forehead (not visible on 06/20/17)
   Neck and arms sore (no bruises, marks or injury)

   Hoarse voice (at time of incident)
   Sore nose

Photos were taken and downloaded into evidence by 379.

I will attach the courtesy report with this warrant packet.

**CONCLUSIONS / DEDUCTIONS:**
Victim and Suspect-Martin were dating during the time of this incident.  They are both real estate agents and had came down to Fresno, Ca and were staying with Suspect-Martins parents.  Victim found phone numbers of call girls on Suspect-Martins cell phone.  An argument ensued between Victim and Suspect over this discovery.

Victim states that Suspect strangled her and kept her from leaving the bedroom.  Victim states that she was able to run out of the house and was chased and tackled down by the Suspect and carried back into the residence by the Suspect.  Victim wants to pursue charges against Suspect-Martin.

**DISPOSITION:**

Case sent over to the DA's office for warrant


Narrative from Report #3   BAHENA (V3463), MANUEL (P1794)
**Synopsis:**
This follow up report covers the prosecution determination of the District Attorney's office.

**Investigation:**
On Wednesday, March 07, 2018, while assigned to the Domestic Violence Unit, I received the prosecution determination complaint form back from the District Attorney's office which stated the following:

Felony Charge(s):
   1.  PC 273.5(a)
   2.  PC 245 (a)(4)

Bail amount: $40,000.00

DA Case  #2017-00-0033069
Court Case #F18901304

Reviewing Deputy D.A.: Carl Monopoli

**Disposition:**

Supplemental information only.

CONFIDENTIAL